Case number 23-5280, United States of America v. Facebook, Inc. appellant. Mr. Rohanda for the appellant, Mr. Cowan for the appellee. 3 minutes. Good morning, James Rohanda, may it please the court. James Rohanda for the appellant, formerly known as Facebook. The core issue to be decided on this appeal is whether the stipulated order imposed the injunctive relief in the FTC administrative order. That was the linchpin of the district court's decision. He disagreed, but the record is overwhelming on that point. The parties in the district court repeatedly said that what was happening was the stipulated order was imposing that injunctive relief. There's a companion question, which is whether the FTC has the power under the statute to do what it is doing. Does section B permit modification or enforcement of the administrative order? So let me just start with the reasons why the stipulated order imposed that injunctive relief. The first is the consent motion. If you look at the circumstances surrounding the entry of the stipulated order, the consent motion was absolutely clear. It said here's what it said. This is a 89 of the record said the stipulated order requires Facebook to pay a five billion dollar civil penalty. And imposes significant injunctive relief, primarily in the form of an amended administrative order that would be entered by the FTC. In other words, the district court is imposing the relief that's contained in that administrative order. Metta said this. And of course, that was that consent motion was set was was made on behalf of the government with the consent of Metta. But Metta also put in a number of briefs in connection with approval of the consent. It seems to me there are a couple of premises you're not stating. Number one is that the FTC has no enforcement authority. It has to go to a court to get its orders enforced. That's number one. Number two, the FCC or the FTC has no power to issue an injunction. Number three is only the district court can issue injunctions. And so those premises, then when you apply that to statements like this, indicate that if there if the significant injunctions are contained in the administrative order has to be injunctions issued by the district court. Yes, your honor. In fact, the FTC, as your honor stated, has no injunctive powers. And in fact, what's going on here is not simply that the FTC is serving the district court's jurisdiction. It's in effect usurping the court's injunctive powers. It's basically saying we came to the to the to the court. We got an injunction. And now we're saying, thank you very much, court. Thank you very much, Metta. We'll take it from here and we will issue new injunctions. That is not statute does not permit that whatsoever. So I would agree with your honor. Exactly. Those premises are exactly true. The the error that occurred here was it. And I think the ramifications of that, as your honor said, is that's the premise. So you have to look for some authority, other authority that gave the FTC the ability to do what it's doing, modify. And if you look at Section 5B, that's the only statute. If this if the 2020 FTC order had not been entered pursuant to, you know, pursuant to a court order, then the FTC would have the authority to modify it. Well, your honor, it only if there was just an ordinary FTC order. Right. Administrative. Yes. Administrative order. They would have the ability to. Well, it would have to be an administrative order. And there's a clear distinction. They went to federal court as instead of what they did in 2012, they proceeded by administrative complaint. So if it were an administrative complaint and they met all the requirements of 5B, then they could modify it. But it's if it's administrative complaint means there's a notice of hearing. If you read the statute 5B, it has absolutely no application. You're saying that. So even though, say, I agree with you that the FTC has no modification authority over the 2020 order because it was entered pursuant, you know, by a district court. Why is why is Facebook's remedy not a petition for review in this? Right, that that the FTC is impermissibly exercising its modification power. Because I think the injunction is appropriate in the situation where the government is proceeding in an improper forum and it was required to go back to the district court and to sort of because the district court retained jurisdiction. The other piece of this is the record is absolutely clear that the court imposed the relief in the administrative order. And it's equally clear that the court retained jurisdiction. So there was no other option for the FTC to do anything other than come back to the federal court if it wished to modify or enforce the order. And that's I don't think that's what the district court said in its order approving the stipulated order. And I'm just I read this on my iPad and I'm now for the first time trying to read it in the appendix. And unfortunately, the important part of the district courts is not in the appendix at once. I don't know whether my colleagues saw this, but it runs from a 196 to a 227 with with a gap. But do you have your appendix in front of you? I don't have to see this. Yeah. Page 200. Just want to point out. I believe the relevant portions on a 201 or conclude. Yeah. Well, the court said that the order doesn't prevent the FTC. And I'm quoting from bringing new enforcement actions. Right. If it if it learns of additional violations. Right. So that if that statement is true and I've looked through the order and the attachment and I don't see anything that contradicts it, then this seems to me almost a tempest in a teapot because the FTC could could have framed up this revised attachment order as just a new complaint. Couldn't they? No. Well, that's not what it did. It didn't bring a separate complaint. That's all it had to do is put that in there and then ask the district court to enforce it. I don't think in that passage, the court is talking about additional violations in the sense of what has been alleged here in what's put forward in the order to show cause. Well, there's no violations would be violations that hadn't occurred to date. When you're talking about enforcing or modify the court at 201 addressed specifically the issue in the context of retention of jurisdiction. The court said the court ends by noting that under the stipulated order, it retains jurisdiction over this matter, including to enforce its terms. And then it goes on to say, in the event the parties return to this court, because can I finish the sentence? You have it in front of you. It's at the top of 200. It's the second sentence. As the United States explains, this is the district where the stipulated order does not stop the FTC from bringing new enforcement actions against Facebook. Should it learn of additional violations of Section five of the act, even if those violations occurred before July 12th, 2019? So if it learns of violations that didn't know about before July 12th and it learns of other additional violations, it can bring a new action. And so I get back to the question. I mean, if the FTC can do that, and what are we arguing about? Well, it can't do what it did here. That's not the same thing as what it's doing here. What it's doing here is bringing an order to show cause with respect to the stipulated order. Wouldn't the FTC and Judge Randolph's hypothetical have to have a different burden of proof than to make a modification to the old order? I mean, wouldn't that be a much bigger burden on the FTC? It would be, and it would be quite different. And I think it's very clear in context that's talking about additional violations. If there's a new thing that the FTC discovers, it could file a new complaint. Nobody's contesting that. But at 201, the court says, what happens if Facebook violates the terms of the amended administrative order? And it says this in the context of retention of jurisdiction. It says, in the event the parties return to this court because the United States alleges once again that Facebook has reneged on its promises and continued to violate the law or the terms of the amended administrative order, the court may not apply quite the same deference to the terms of a proposed resolution, then cites this court's Microsoft decision. So what it is saying is absolutely crystal clear. The court is saying if what you're alleging, not new violations, but what you're alleging are violations of the terms of the administrative order, my retention of jurisdiction, I'm retaining jurisdiction over that. That's what the court said at the time it entered the stipulated order. This is the memorandum opinion filed on the docket right before the stipulated order. And the parties agreed. The parties stated this. In fact, the FTC continued to state it after the stipulated order. If you look at the course of performance, this is at A611, I believe. The FTC wrote to MEDA and said it's the stipulated order that's imposing the critical provisions of the amended administrative order. Asked my earlier question maybe a different way. So here, Facebook is challenging the FTC's order to show cause. So that's a particular order that the FTC has issued. Does it matter to Facebook whether they seek review of that order here in a petition for review or whether they have review, you know, under stipulated order in the district court? Yes, absolutely. It matters. It matters greatly. I mean, the standard of proof is different. The review is different. The review is different. I mean, the factual findings that the commission would make, it's an entirely different process. In fact, your Honor, I just dealt with a case. That's a completely different process than what should happen here. Which is if they wanted to enforce or modify, which is what they specifically said they're doing. We're enforcing and we're modifying. They have to go. It's a it's a judge. This is a judgment. They have to come back to the district court and satisfy 60B for that. If they want to go off and file new allegations and new complaints, they could do that. That's the alternative, isn't it? I mean, at least my impression from your argument is that instead of filing a new attachment, a modified attachment, a or whatever, they should have filed in the district court to hold Facebook in contempt. Well, they could have tried that. They could have tried that. That is the usual. In structural injunctions, one of two things happens when there's a violation. By structural, I mean prisons and schools and antitrust. One of two things happens when there's a violation. You either go back to the district court and try to tighten up the terms of the injunction or you hold the party in contempt. They had they had multiple options. They could have sought modification or 60B. They could have sought contempt. They could have sought civil penalties under 45L for a violation. They didn't do any of those things. The path that they chose, interestingly, is the path that would expand their powers under 5B. And that path is it's crystal clear they don't have the power to do that. The 5B allows them to modify administrative orders that are issued on a notice of hearing with a stipulated record or a litigated record. And it's actually if you look at 2.32C, that's a federal regulation that deals with settlements. Settlements of administrative complaints. So that doesn't apply here either. But it's very clear from 2.32C that says if you're in the settlement context of an administrative complaint, you're in the settlement context, not fully litigated, then the respondent has to agree that the order that results will have the same effect as if it were litigated. And you have to agree to modify. And so it's treated in the same manner as a litigated or stipulated record. So that actually was interesting. The import of 2.32C is it demonstrates that 45B does not or 5B does not cover settlements like this. So should we give any deference to the district court's own interpretation of its stipulated order? No, Your Honor. Why is that? Because this is a contract. The consent decree is a contract. It should be interpreted according to the intent of the parties. And the circumstances, the court in Pickford said, circumstances surrounding the entry can look at the course of performance. And the court did not address, for example, the conclusion of the memorandum opinion. The evidence of what the parties intended is absolutely overwhelming here. There's nothing cited by the other side. There's nothing cited by them that suggests, no, that the parties did agree that it could be modified or that the parties thought that the administrative order was not being imposed, the terms were not being imposed. There's nothing on the other side of the ledger. All of the circumstances and the evidence as to what happened here comes to at least one conclusion, which is the stipulated order ordered the relief contained in the administrative order and retained jurisdiction over that. And that meant they had to come back to the district court in order to enforce it. The FTC vote to put it on the FTC docket was 3-2. If the attachment A was kind of part of the district court's order over which it would retain jurisdiction, I don't understand why the two dissenters would have voted against putting it on the FTC docket. I don't think it was intentional, but I think it was left unclear. That argument made by the FTC was sort of unclear. The 3-2 vote occurred back in July of 2019, because that's when they were authorizing the settlement. The court didn't approve. It's not like the court approved this in April 2020, and then the FTC considered it. The FTC already had voted to approve the settlement that was then submitted to the court in July of 2019, and then the court took action in April 2020, having considered the consent decree. So all that happened after the entry by the court of the stipulated order, all that happened was a few days passed. It was a ministerial act. They just put the document that was attached to the stipulated order on file at the FTC, and it's very clear why they did that. It says it in the consent motion. And you're saying there were no dissents from that ministerial action? No, there was no dissent from that. And it was done to replace the 2012 order, and very interestingly, the 2012 order, which was an administrative order, had a modification provision. The 2020 did not. That has to be viewed again as intentional. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the court. Zach Cowan for the government. Your Honors, pursuant to Section 5B of the Federal Trade Commission Act, the FTC is conducting administrative proceedings designed to protect the public. Specifically, it is trying to determine whether it should modify an administrative order with respect to MEDA's data privacy based on allegations that it is now for the third time misrepresented its data privacy practices to consumers. Mr. Cowan, how does the FTC retain modification authority when there has been a consent decree in the stipulated order? I mean, here the stipulated order says the district court retains jurisdiction. It makes it clear that it's granting the injunctive relief that the FTC sought, you know, through the administrative order, you know, that is Appendix A. And so that's all part of the settlement that the government came to with Facebook. How does the FTC continue to have modification authority in that context where an Article III court has entered a consent decree in stipulated order? Your Honor, I want to start by clarifying exactly what the settlement required here. Now, the government has a lot of cases where they seek a stipulated order involving the Federal Trade Commission. And often in those cases, part of the injunctive relief is laid out in stipulated order with some of the same sort of obligations that you might see. And what's attachment A to the stipulated order here? The parties here are very sophisticated. They spent months working on this. And the precise term that they use was not that the court shall order all of these obligation terms. Rather, the party said that MEDA shall consent to modification in the administrative proceeding. And there are reasons, Your Honor. I mean, to read it that way. So when they consent to modifications, they're also consenting to the FTC continuing to modify into the future. So, like, they've come to an agreement where they pay a large fine and they agree to all of these onerous terms in Appendix A. And the FTC gets to continually unilaterally modify those terms? I mean, how could that? I mean, why would a private party agree to that? Your Honor, pursuant to Section 5B of the FTC Act, the FTC has the authority to make a modification where there are changes in fact or law or the public interest required. But after it's received $5 billion from the respondent? Your Honor, I mean, I have the same qualm that Judge Rauh has. The bargain was, we'll give you $5 billion and we'll accept these terms for injunctions, right? And you say we can change the terms for injunctive relief. So are you going to give the $5 billion back because they don't have the benefit of that bargain any longer? So, Your Honor, I think there's essentially two questions. And I think the first is why would they have agreed to the $5 billion settlement? And I think the second question is related but slightly different. Why would MEDA have agreed to have the FTC issue that order knowing that the FTC has the power to modify under Section 5B? So I want to start with the $5 billion and then hit the second point as well. You might want to also mention along the way why the court and the attachment means the FTC. Yes, Your Honor, and I'll certainly address that as well. So starting with the $5 billion point, it's important to recognize that when settling the case, there are a lot of claims that the government should have sought even more money related to this case. Ultimately, the final relief sought was essentially $5 per violation. The statutory cap for those penalties is over $40,000 per violation. So there was a serious risk of overhead that MEDA could have ended up paying a lot more money if it actually litigated this case to resolution. So that's… Settlements are all of it? Exactly, Your Honor. So I think that's one reason to explain why it would have settled the particular allegations at hand. I think there's a separate question of why the commission and MEDA would have agreed to issue the administrative order as a part of – issue the conduct relief as a part of an administrative order as opposed to a court order. And I think this makes sense for several reasons. Under Rule 60B, as this court is well aware, there's cases such as Salazar that makes very clear that relief under those circumstances is very stringent. It's very difficult to modify without finding sufficient reasons to do so under Rule 60B. However, actually having a modification of the FTC's proceeding, the Supreme Court has recognized, for example, an international union. There are ELMO cases. The ELMO cases are both other examples. The commission can modify based on changes of fact, law, or the public interest. That could also benefit MEDA to actually have that flexibility. And we actually see that in Parts 2 and 3 of the administrative order that was ultimately entered. What about the fact that the FTC's order says that it will be in place for 20 years, and the district court discusses that? Doesn't that also suggest some limitation on the FTC's modification power? I think it recognizes that the order would be in place absent some additional action, Your Honor. And I don't think MEDA is necessarily – Your Honor, I think the same is often true for stipulated orders as well. They'll contain some provision, but that doesn't bar the stipulated order from then considering new conduct related. Did the FTC have to enter Appendix A, or is the FTC's position that even after the stipulated order, they could have, you know, modified Appendix A when they were making their 2020 order? As Section 2 of the stipulated order is laid out, MEDA only agreed to provide its consent to waive its rights with respect to the particular modification that would have issued at Attachment A. Could the commission have done something different? Perhaps, but if it did, MEDA had not agreed to waive any rights with respect to that. I think realistically, Your Honor – So you think it's possible the FTC could have, after a court entered an order, the FTC could have put in place something other than Appendix A, and it would just be to Facebook to challenge that? Well, Your Honor, so Judge Kelly – Do you think that FTC has the authority to do that? As Judge Kelly correctly recognized, he never imposed the obligations that were listed in Attachment A. So if the commission would have imposed different obligations, it would in no way have conflicted with the court order. I think that's important to understand. But to the extent that the commission decided to go see – You can make that argument with a straight face. I mean, if a party consents to certain terms, they're only consenting to somehow put it into, you know, the FTC register. That's all they're consenting. They're not actually consenting to the terms? I mean, that's the argument that the government wants to make here? Well, so, Your Honor, to be clear, META considered to certain terms, and the parties were very sophisticated. They very intentionally didn't bind the commission to do anything. There were several points in the briefing below, well, at the time the order was entered, where the parties recognized that the commission retained its discretion. It continually invoked the commission's discretion to modify its own administrative order. If they were so sophisticated, then why did they contradict your argument by inserting into the attachment A the following sentence, this court retains jurisdiction over this matter? So, Your Honor, I think it's important to recognize this court retains jurisdiction is the first binding. And as Judge Kelly recognized below – Don't leave out the of this matter. That's right. The matter is what the court is retaining jurisdiction over in a document that's the attachment A. Absolutely, Your Honor. So, this court has jurisdiction over the matter. And the question is, who made that finding? And if you look at the sentence that immediately precedes this court has jurisdiction, it says, the commission makes the following findings and issues the following order. That second sentence cannot be read without the sentence that immediately precedes that. And it's also worth noting that even though it is attachment A, immediately at the top of the heading is united – I know what the heading says. I also know what the FTC said in filing their motion for the district court to accept it. And as counsel for Facebook pointed out, the opening line of that motion on page A89 says that this stipulated order requires Facebook or imposes significant injunctive relief primarily in form of an amended administrative order. My question – a question I'll ask you. Does the FTC have any authority to impose injunctive relief? Your Honor, Judge Kelly looked at the statement. No, no, no. Yes or no? Does it have – I beg your pardon. Does the FTC have any authority to impose injunctive relief? It has authority to issue an administrative cease and desist. Does it have authority to impose injunctive relief? The answer is no. It doesn't. It has to go to court. And so when you see a representation by the FTC that the stipulated order imposes significant injunctive relief, which then explains that it has to be talking about the court. But, Your Honor, the second half of that sentence goes on to say primarily in the form of an order that will be issued by the FTC. Primarily, right. But if the – Your Honor, if I'm following – respectfully, if I'm following you correctly, if the FTC never has authority to issue an injunction, the FTC could not issue an order imposing injunctive relief either, as that sentence goes on to suggest. Unless it did it as part of a settlement and a consent decree, and that's exactly what happened to you. Respectfully, Your Honor, Section 2 of the stipulated order, as written, is very clear that the FTC would be issuing an order pursuant to Section 3.17 of its rules. So the FTC puts in this order, but, you know, you've admitted the FTC lacks enforcement authority. So what it seems to me is happening here is the FTC is using its modification authority in order to basically bring an enforcement action. And I think it's worth looking at. I mean, the FTC's proposed order here makes very substantial revisions to the 2020 order and imposes many new obligations on Facebook. Absolutely, Your Honor. And the proposed modification – And so to do that, though, you can't do that through a modification. You're trying to enforce the 2020 order by changing it and, you know, with modifications. But I don't see where the FTC has that authority under the FTC Act. So I want to respond to the authority point. And before I do so, if you don't mind, Your Honor, in terms of the actual scope of the changes, I just want to point out that those aren't currently before the court. The META will have an opportunity to contest those under Section 5c. But they give a sense of the flavor, right? I mean, for instance, like Part 10 says Facebook – you know, before Facebook can introduce a new or modified product or service, its most recently privacy assessment must show that its privacy program meets the requirements of the order. That is a very substantial restriction on a private company that it can't introduce a new or modified product or service without the approval of the agency. I mean, and perhaps that's something that the FTC could impose if it brought a new complaint and a new order. But to put those types of terms into, you know, this innocuous-sounding administrative modifications authority, it seems like you're bootstrapping the fact that, you know, you have no enforcement authority into the modifications authority. Well, Your Honor, so just taking the statutory point. So, of course, as I indicated, it would be – META could seek review of that under Section 5c, and that's what Congress intended was for them to file, as Your Honor mentioned earlier, a petition for review after the Commission reaches a final decision on what modifications are appropriate. That question hasn't – isn't before the Court today. The Commission is still trying to determine whether any modifications are appropriate at all, and so we're not at that point today. But what I would say, Your Honor, just in terms of the pure statutory question, Section 5b does authorize the Commission to modify an administrative order, quote, in whole or in part based on changes of law or fact of the public interest. Again, those questions were raised below. This goes back to Judge Randolph's question, which is that this isn't an ordinary administrative order. It's an FTC order that was, you know, with a variety of forms of injunctive relief imposed pursuant to a court order. Well, Your Honor, we would respectfully disagree that it was imposed pursuant to a court order. I understand that the language META is relying on, but Judge Kelly said that's a retroactive characterization of what actually occurred. I have a question. Would it be different if instead of putting the terms of the order into Appendix A, those terms were, you know, like just listed in Judge Kelly's order? Would that actually be different? Absolutely, Your Honor. And in most cases, in my personal experience working on these cases, typically the terms are included in the stipulated order. This is a unique setup that the parties did here where they said shall consent to modification of the administrative order. If in fact they had been, to follow up on Judge Rao's hypothetical, if in fact all these terms have been put right into the order itself, the FTC still would have the authority to modify. But the difference is they couldn't do it on their own. They'd have to go to the court and ask for a modification of the terms of the injunctive relief. And so the FTC has that option. And there are Supreme Court cases, there are cases all over, you know, in the courts of appeals and the district courts. One that comes to mind is RUFO in the Supreme Court where you can go back and they keep modifying and modifying consent decrees. That could be done. And in fact, if in fact the attachment A is, this is not a question, but if attachment A is part of the consent decree, then the mistake the FTC made was doing it on its own without going back to the court. Well, Your Honor, so typically Rule 60B applies for court modifications. And for reasons I've mentioned, the parties had an interest in making sure that the FTC could continue to modify its own administrative order pursuant to Section 5B. As the Supreme Court has also recognized, the FTC's authority to modify a final commission order is much greater than the court's authority under Rule 60B in traditional principles of res judicata. So there's a lot more flexibility for both parties, the commission and MEDA, to actually issue this order through a cease and desist order or injunctive relief or whatever other term, though it's not traditionally injunctive relief as the court would issue. I did want to also clarify one point. Judge Walker asked earlier whether any commissioners dissented when the modification was actually issued in 2019. At A380, at the bottom of the page, it does very specifically say that two of the commissioners did dissent. And the commission, when it issued the order at A380, it did make an independent statutory finding that a modification was in the public interest. If it truly believed its hands were tied and it was unable to modify its own order, it could have simply noted the court's judicial resolution of the matter. It would be no reason for it to make its own finding. There would be no reason for the commissioners to dissent. And MEDA could have objected to the finding, but that didn't happen. Even when the modification occurred, as contemplated by the parties, there was an independent finding by the commission that a modification was appropriate. Judge Kelly recognized the same thing. And he again said that this shows that the FTC retained its discretion and believed it retained its discretion to modify its own order. Do you think that if we were to agree with the FTC here, would it ever be possible for the FTC to enter into a private settlement? I mean, if the view is that a private party can settle, have a court order, you know, recognizing the settlement, but then the FTC can just continue indefinitely to modify its orders. I mean, I assume no private party would ever agree to settle. Your Honor, typically in most cases, the FTC always, when it does issue administrative orders, it still has the statutory power that Congress gave it under Section 5B. There are some circumstances, such as ELMO, where the commission and the party have reached some sort of agreement to limit that power in some way. And the parties could do that potentially with the commission if they wanted to do so. But by default, Congress determined that the FTC should have authority to modify its own orders to protect the public. Isn't that default overridden by the fact that we have a court order here? No, Your Honor, I don't believe so, because the court order, again, is very important to recognize how the party set up the settlement. It says, shall consent to waiver of its rights and to modification of the order. The commission was never ordered to actually modify its order in any way. And, Your Honor, that's— It's modification of the decision and order with the decision and order set forth in Attachment A. So they've agreed to Attachment A. They've not just agreed to, like, any modification, right? I mean, to the modification, to the decision and order set forth in Attachment A. Absolutely, Your Honor, that's right. And that brings me back to what I said a few moments ago about, first of all, it's ordering defendant to consent. It doesn't order the FTC to do anything whatsoever or the United States to do anything. And that decision was very intentional by the parties to use that language. But additionally, it says waiver of its rights consistent with the modification that we discussed. Perhaps the FTC may have tried some other modification, and MEDA could have, you know, argued against that. It could have retained all of its procedural rights. Realistically, that's not what happened here. Can you explain what's going on in the United States motion and the FTC's motion, joint motion, to accept the settlement agreement on page A93? A93, yes, Your Honor. Is there a particular line to which you're pointing? At the top. The injunctive relief provisions articulate specific but flexible compliance terms designed to ensure that Facebook and its controlled companies protect user data. And then these are listed. They're injunctive relief terms. Absolutely, Your Honor. So here's what I'll say. The procedure that was used at times, the injunctive relief, the FTC's cease and desist order was called injunctive relief. And there's a lot of discussions. The procedural mechanisms here are pretty complicated. But there are other things I want to point out in the record, too, that essentially make this distinguishing point where the government, you know, where it felt like the government and neither of the parties expressly every single time they discussed the procedural mechanism that was occurring re-articulated the entire process every single time. But I would point the court to A155, for example, where the parties specifically say there are two separate orders that would operate together that would let the DOJ obtain discovery rights. If the court's order gave full discovery rights, there would be no reason for there – you would have to rely on both orders together for the DOJ to get discovery rights. That seems to imply that the FTC's order and the court's stipulated order had to operate in tandem to give the government that right. So, of course, Your Honor, there are places where it's referred to as, for example, injunctive relief. And you could say, well, the commission doesn't issue injunction. But there are other places in the same briefing record where the parties took much more care to distinguish the two types of orders that were at play. And ultimately, for those reasons Judge Kelly said, this was a retroactive characterization of the record. There's language in – I think there's language in Attachment A that talks about the FTC having the right to appeal. That's right, Your Honor. I mean, the full sentence together – and again, this was selectively exerted in some of the briefs – but it says both MEDA and the commission appeal the right to challenge or otherwise contest the woody of the order. That broad language is essentially trying to scope out any type of challenge. So whether it be a challenge to the woody of the order in this proceeding or in some other proceeding, the administrative proceeding, whether by the commission, by MEDA, whoever else, really that long provision is just to say the order is, you know, essentially cannot be appealed at this time. Let's say that the FTC actually acted illegally when it modified what it modified. What do you think is Facebook's recourse? Do you mean – well, so the FTC hasn't modified. So let's say after the show cause order, they decide they're going to modify the order on their document, the entry on their document, the 2020 order, 2020 FTC. Let's say they modify that, and Facebook thinks that that's illegal. Imagine Facebook's correct. What should Facebook do then? I think pursuant to Section 5C, they would file a petition for review at this court. And what would our standard of review be? I think it would be deferential. I don't have the exact statutory language in front of me, but I believe it's deferential, some sort of deference under 5B and 5C. If the district court does have continuing jurisdiction over compliance with Attachment A, then do you concede that an injunction would be appropriate? If this falls within the court – if it falls within the district – if the terms were substantively ordered by the district court, then the district court would have jurisdiction, but the district court didn't substantively order the terms. And if it has jurisdiction, then an injunction by the district court would be appropriate. The one reason I hesitate on that, Your Honor, is META has recognized at page 15 of its reply brief that the commission retains authority to modify the order in some circumstances. And those circumstances are laid out in Parts 2 and Parts 3 of the stipulated order. It creates an unusual situation where essentially META is claiming that the commission can modify the court-stipulated order in some circumstances, but that seems inconsistent with the idea that it would be the court's administrative order at all – I mean, the court-stipulated order at all. So it's a strange situation to even encounter. It sounds like a yes. But, Your Honor, if it were the court's order, why would it authorize the commission to modify Parts 2 and 3 of the stipulated order? It seems like the court would have given it power to do that. I mean, that may be part of a good argument that it's not part of the court's order and the court did not retain jurisdiction. My hypothetical is imagine we disagree with you and we find that the court did retain jurisdiction. I think at that point, an injunction would be appropriate. I think there are similar cases where the court is enjoined under those circumstances. Yes. What page of the reply brief are you talking about? Reply brief at page 15. Is there a particular sentence you have in mind? Yes, Your Honor. One second. It says the existence of two orders does not detract in any way from the district court's imposition of injunctive relief as part of a consent decree over which it retained jurisdiction. It goes on to discuss what it characterizes as bilateral modification. Possible bilateral modification of certain injunctive provisions without further court approval as consent decrees routinely do. Your Honor, I'm not aware of any authority that the parties can work together to modify a court's order absent the actual court making a decision to do so. I'm not either. Thanks. Thank you. Thank you. I wanted to clarify my response to Judge Walker, your question. The written dissents were written in 2019, and that was a 3-2 vote, and those were the written dissents. When the deal came up after the judge approved it, of course, they reissued the decision. They stated that they had dissented. There was no new opinion. Nothing occurred in those 3 or 4 days between the time that the court entered the order and the FTC. I don't want to eat up your time, so I'll let you do a minute 30, but I don't think that's right. I want to ask you about that. Okay. The point here is it was ministerial. The deal was locked and loaded, and the claims had already been released pursuant to the order. The question about whether it makes a difference in the body of this, whether the attachment A was in the body of the stipulated order or not, I mean, it was filed in the same filing on the same docket. It's contract law that it would be incorporated into the stipulated order, and in any event, there needed to be something to be able to be filed on the FTC docket so as to replace the 2012 order. The parties said that in the consent motion. As to this court has jurisdiction, I don't think the government can continue to take the position that the commission is a court. It's not a court. Congress creates courts. Congress knows how to create a court. If they truly had support for that, they would cite us to the act of Congress that created the FTC as a court, and it's never referred to itself as a court. The interpretations provided by the government really make no sense. It makes no commercial sense that MEDA would agree to pay $5 billion, enter into an injunction that could be freely modifiable by the FTC, imposing new injunctive relief, which in any event, they're not permitted to do. Only courts can do that. In terms of the question about harm to the FTC, I agree with the point that it would harm the FTC. Parties would not agree to settle if their counterparty could freely rewrite an injunction over time. And as to 5B, it's just critical that the language in 5B, we continue to hear the position that 5B allows modification of the FTC's orders. That's just not correct. It says that it can modify orders under this section. So you have to look at the order that's being contemplated under that section. It's an order that results from a complaint issued on a notice of hearing where there are factual findings made and a cease and desist order is issued. That's not what we're dealing with. And there is no other, in addition to no statutory authority, there's no agreement to modify. The fact that the parties may agree that MEDA could seek from the commission certain modifications, that is of no moment here. Of course a consent decree can allow all sorts of things that the party, it was up to the court to approve that or not, and the court approved an order that allowed MEDA to seek certain limited circumstances, modifications to that order. So on JA380, this is the order modifying the prior decision. It says it's ordered the matter will be reopened. It's further ordered that the 2012 order will be modified with the attached decision in order. And right after that, it says, by the commission, commissioners, Chopra and Slaughter dissenting, dissenting in the present tense, not they dissented a long time ago when the original settlement was being bargained for. So it seems to me like they, two commissioners dissented from this 2020 modification. Yes, the two commissioners dissented. I guess they dissented from it. That suggests that they dissented from the modification order. That suggests the modification order was not ministerial confirmation of the locked and loaded deal. Well, they need a majority vote, and the majority of vote had already taken place to approve and go to the court with an agreed upon deal. With two dissenters. So in one world, there's the FTC's vision of how things played out, which is the court issued an order that was binding, and Facebook agreed not to object to the entry of attachment A on the FTC's document. And that was the extent of the deal. It didn't tie entering attachment A by itself, did not tie anyone's hands other than Facebook could not object to the entry of it in the FTC. And in that world, it makes sense that if two commissioners didn't like attachment A, they would dissent from entering it onto the FTC's docket. But in your world, it was a locked and loaded deal, and entry of it on the FTC's docket was simply ministerial. And in that world, it really doesn't make any sense that two commissioners would dissent from a ministerial act that confirms a deal that was already locked and loaded. Well, I think the first reading of that is if they hadn't dissented, then they might have been waiving the prior dissent that they had issued, saying we don't agree you should go to the court with this deal. And so the reason I say it's locked and loaded is there already was a release in the stipulated order signed by the court. Under your theory, those two commissioners voted to defy the district court. It's an odd thing for commissioners to vote to do. I don't think I don't if that's if that's a fair reading of it, it could be that they're preserving. They weren't so much defying it as they were saying, we've not agreed to this in the first instance. We understand it's going forward and we're we are dissenting from this again. But it really doesn't change the fact that the that the deal had essentially been done. I suppose if additional if the hypothetical is additional commissioners had said, well, we're not we're going to we're going to dissent from entry of this order on the docket. But it would already had its had its release in place and the claims would have been released. So it really when I say it's ministerial, I think there's a court. It wouldn't undo the federal court's order. If you're saying that only Meta had to agree in the FTC didn't FTC didn't agree, the claims would be released. Thank you. Thank you.
judges: Rao; Walker; Randolph